**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**GRAND HERITAGE MANAGEMENT, LLC,**

**Plaintiff,**

**v.**

**MICHAEL MURPHY,**

**Defendant.**

**06-CV-249-BR**

**OPINION AND ORDER**

**ROBERT SIMON**
P.O. Box 820035
Portland, OR 97282-1035
(503) 417-8766

Attorney for Plaintiff

**KENNETH R. DAVIS II**
**WILLIAM T. PATTON**
Lane Powell P.C.
601 S.W. Second Avenue
Suite 2100
Portland, OR 97204-3158
(503) 778-2100

Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (#7), Defendant's Motion to Dismiss for Failure to State a Claim (#7), Defendant's Motion to Consolidate (#10), and Plaintiff's Motion in the Alternative to Transfer (#28).

For the reasons that follow, the Court **GRANTS** Plaintiff's Motion in the Alternative to Transfer, **DENIES as moot** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, **DENIES as moot** Defendant's Motion to Dismiss for Failure to State a Claim, and **DENIES as moot** Defendant's Motion to Consolidate.

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted:

Plaintiff Grand Heritage Management, LLC (GHM) is a hotel-management company registered in Maryland and headquartered in Portland, Oregon.

Defendant Michael Murphy is a resident of New York and a managing member of Boutique Club, LLC, located in New York. Boutique specializes in the acquisition, development, sales, and marketing of "alternative real estate use products (fractional, timeshare, condo-hotel)" at luxury hotels.

In January 2004, Defendant encountered John Cullen, President of GHM, at a hospitality conference in Los Angeles,

California. Cullen told Defendant that Plaintiff was interested in expanding "the GHM platform," and Cullen and Defendant discussed forming a working relationship between Boutique and Plaintiff. Cullen invited Defendant to Portland, Oregon, to discuss a possible structure for the relationship. After the meeting, Cullen sent Defendant an email that outlined Cullen's proposal for a joint venture between Plaintiff and Boutique to be named Grand Heritage Residence Club (GHRC). Defendant would provide expertise in sourcing transactions and relationships and negotiating deals for the development of properties into "interval ownership" properties, and Plaintiff would provide capital and management for the properties.

Defendant communicated about Cullen's offer with Ed Wender, counsel for Plaintiff, and Ed Blum, Plaintiff's Chief Financial Officer. Both Blum and Wender were located in Baltimore, Maryland.

On April 8, 2004, Defendant met with Wender in Baltimore to negotiate the terms of an agreement with Plaintiff. Defendant and Wender exchanged drafts of an agreement.

On April 12, 2004, Defendant went to Oregon to meet with Cullen and a representative from Endeavour Capital, LLC, Plaintiff's capital partner, and to outline Defendant's proposal. After the meeting, Defendant continued to negotiate from New York with Wender in Maryland by telephone, fax, and email regarding

the terms of the proposed agreement.

On April 29, 2004, Defendant signed a letter Agreement in New York drafted by Wender and returned the Agreement by fax to Wender in Maryland. Defendant asked Wender to have Cullen sign the Agreement and fax it to Defendant in New York. Defendant, however, never received a fully executed version of the Agreement.

In the Agreement, Defendant proposed forming GHRC as a limited liability company (LLC) with Defendant as a managing partner and Cullen or another Plaintiff designee as chairman. The Agreement also provided Defendant would remain in New York, and GHRC would maintain "operational offices" in New York. Under the Agreement, GHRC would be formed "on agreement of the parties" or on (1) closing a transaction to develop a fractional property, (2) obtaining an equity investor to provide 80% of the equity required to acquire a property to develop for fractional ownership, and (3) "contribution of the call center agreement in a manner satisfactory to GHM." Because GHRC was never formed as an LLC or any other corporate entity as contemplated by the Agreement, Plaintiff paid Defendant for acting as a consultant and for providing services as an independent contractor. Defendant received a 1099 statement from Plaintiff.

Between April 2004 and November 2005, Defendant "presented" to Cullen numerous properties in locations such as New York,

Massachusetts, and London for his consideration. Defendant did not present any properties in Oregon. Plaintiff was unable to close any of the property transactions because Plaintiff did not have the necessary capital.

In December 2004, Defendant visited Oregon and met with Cullen and the owner of Great Hotels of the World to explore the possibility of developing a strategic alliance between Great Hotels of the World and Plaintiff.

On July 14, 2005, Cullen sent Defendant a letter stating Plaintiff was terminating their Agreement. In the summer and early fall 2005, Defendant spoke with Wender in Maryland regarding various proposals for Defendant's relationship with Plaintiff. In early November 2005, Defendant met with Cullen and Wender in New York for further negotiations. On November 7, 2005, however, Defendant advised Cullen and Wender that he was not interested in a relationship with Plaintiff on the terms proposed by them.

Defendant has lived in New York since 2000. Defendant has never lived in Oregon, has never owned property in Oregon, has never had a bank account or other financial account in Oregon, and does not have a representative or agent in Oregon. Defendant has visited Oregon fewer than five times, and each visit lasted no more than three days.

**PROCEDURAL BACKGROUND**

On February 22, 2006, Plaintiff filed an action against Defendant in this Court alleging Defendant (1) converted Plaintiff's trade secrets, (2) breached his Agreement with Plaintiff, and (3) committed fraud in the inducement. On April 12, 2006, Defendant filed a Motion to Dismiss for lack of personal jurisdiction or in the alternative for failure to state a claim. On April 18, 2006, Defendant filed a Motion to Consolidate this matter with *Grand Heritage Management, LLC. v. DiGiulio,* No. 06-CV-248-BR. On May 10, 2006, Plaintiff filed a Motion in the Alternative to Transfer this matter to the Southern District of New York.

**PLAINTIFF'S MOTION TO TRANSFER VENUE**

**Standards**

28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

"This statute partially displaces the common law doctrine of *forum non conveniens*. Nonetheless, *forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843

(9th Cir. 1986) (citations omitted). When deciding a motion to transfer, the court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Id.* The defendant has the burden to "make a strong showing of inconvenience" to upset the plaintiff's choice of forum. *Id.*

**Discussion**

Plaintiff moves to transfer this matter to the Southern District of New York in the alternative to dismissal. Whether to dismiss a case without prejudice or transfer it under § 1406(a) is within the sound discretion of the district court. *In re Hall, Bayoutree Assoc., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991). In determining whether to transfer or to dismiss a case, the court may consider the applicable statute of limitations, the relative injustice imposed on the parties, whether the suit was filed in bad faith or for harassment, whether the plaintiff has requested or shown an interest in a transfer, and whether the chosen venue was clearly or obviously improper. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201-02 (4th Cir. 1993). *See also Johnson v. Payless Drug Stores Northwest, Inc.*, 950 F.2d 586, 588 (9th Cir. 1992); *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1523 (9th Cir. 1983).

To determine whether venue is proper, the court must consider both private and public factors. *Decker Coal Co. v.*

*Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Here Plaintiff contends these factors weigh in favor of a transfer of venue. If the Court does not grant his Motion to Dismiss, Defendant agrees venue in the Southern District of New York is more proper than venue in this Court.

**A. Private Factors**

> The private interest factors include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining willing witnesses; (3) possibility of viewing subject premises; [and] (4) all other factors that render trial of the case expeditious and inexpensive.

*Creative Tech.*, 61 F.3d at 703.

Defendant is a resident of New York, Defendant signed the Agreement at issue in New York after dealing with Plaintiff's counsel in Maryland. In addition, Defendant received payments in New York, conducted his business for Plaintiff from New York, and proposed real-estate transactions for property on the East Coast. Accordingly, New York has easier access to sources of proof, many of the witnesses live closer to New York than to Oregon, and the possibility of viewing any of the proposed properties will be greater in New York than in Oregon.

On this record, the Court concludes Plaintiff has presented sufficient grounds to support its request for a transfer of venue on the basis of private interest factors.

**B. Public Factors**

> Public interest factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law.

*Creative Tech.*, 61 F.3d 696, 703-04.

Here the contract at issue was signed in New York, Defendant conducted his business from New York, and the alleged breach of Defendant's employment duties is occurring in New York. New York, therefore, has an interest in resolving this matter, and New York laws may be applied. These factors, therefore, weigh in favor of transferring this matter to the Southern District of New York.

On this record, the Court concludes Plaintiff has shown both the private and public factors weigh in favor of transferring venue from Oregon to New York; *i.e.*, Plaintiff, therefore, has met its burden. *See Decker Coal*, 805 F.2d at 843.

Accordingly, the Court grants Plaintiff's Motion in the Alternative to Transfer this matter to the Southern District of New York.

**DEFENDANT'S MOTIONS TO DISMISS**

Because the Court, in the exercise of its discretion, grants Plaintiff's Motion in the Alternative to Transfer this matter to the Southern District of New York, the Court denies Defendant's Motions to Dismiss for Lack of Personal Jurisdiction and to Dismiss for Failure to State a Claim as moot.

## DEFENDANT'S MOTION TO CONSOLIDATE

Because the Court transfers this matter to the Southern District of New York, the Court denies Defendant's Motion to Consolidate as moot.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion in the Alternative to Transfer Venue (#28), **DENIES as moot** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (#7), **DENIES as moot** Defendant's Motion to Dismiss for Failure to State a Claim (#7), and **DENIES as moot** Defendant's Motion to Consolidate (#10).

IT IS SO ORDERED.

DATED this 21st day of July, 2006.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge